UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAHIRIH JUSTICE CENTER, *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, *et al.*,<br><br>Defendants. | Civil Action No. 21-124 (TSC) |

## MEMORANDUM OPINION & ORDER

Before the court is Plaintiffs' Renewed Motion to Partially Lift Stay ("Motion"), ECF No. 47. Defendants, officials with supervisory authority over the Department of Homeland Security (DHS), the U.S. Department of Justice (DOJ), and the U.S. Citizenship and Immigration Services (USCIS), oppose the motion, ECF No. 50 ("Opp'n Br."). For the following reasons, Plaintiffs' Motion to Partially Lift Stay is GRANTED.

### I.   BACKGROUND

Plaintiffs—nonprofit organizations providing legal counsel and support to immigrants—filed their Complaint in January 2021, asserting that DHS and DOJ issued a final rule, 85 Fed. Reg. 80,274 (the "Rule"), which "imposes vague and sweeping new limitations on asylum eligibility that will dramatically curtail the availability of asylum and related relief to people fleeing persecution, in contravention of the plain language of the Immigration and Nationality Act . . . and the United States' international commitments." Compl. at 1.

Plaintiffs raise seven claims. The first three challenge the appointment of Chad Wolf as DHS Secretary, alleging: (1) violation of the Appointments Clause (U.S. Const. art. II, § 2, cl. 2) for Wolf's improper appointment to the role and unlawful approval of the Rule; (2) violation of

the Homeland Security Act (6 U.S.C. § 113), the Federal Vacancies Reform Act ("FVRA") (5 U.S.C. § 3345) and the Administrative Procedure Act ("APA") (5 U.S.C. § 706) because Wolf filled "a vacant office in an acting capacity without authorization from the FVRA or any alternative succession statute"; and (3) an *Ultra Vires* Action, requesting the court to "enjoin [the Rule] under the Court's inherent equitable authority to grant prospective injunctive relief from injuries caused by a government official who is acting in excess of statutory or constitutional limits."  Compl. at 119–22.

The remaining four claims are brought under the APA, asserting that: (4) the Rule is contrary to law because it violates the Immigration and Nationality Act (INA) and the Convention Against Torture (CAT); (5) Defendants failed to "meaningfully consider the comments" received "during the notice-and-comment period" and "comply with the notice-and-comment requirements by limiting interested parties to only 30 days to submit comments instead of the enumerated 60 days"; (6) the Rule is arbitrary and capricious; and (7) the Rule violates the Fourteenth Amendment Right to Equal Protection because its "list of barred nexus claims expressly draws distinctions on the basis of gender."  Compl. at 122–26 (internal citations omitted).

Plaintiffs request, *inter alia*, that the court find the Rule "unlawful, unconstitutional . . . and invalid in its entirety," "[v]acate and set aside the Rule" under the APA, 5 U.S.C. § 706(2), and "[e]nter a nationwide permanent injunction enjoining Defendants" and others from "implementing or enforcing the Rule."  Compl. at 126.

Other courts have addressed similar claims.  In *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, No. 3:20-cv-09253-JD, and *Immigration Equality v. U.S. Dep't of Homeland Sec.*, 3:20-cv-09258-JD, a court in the Northern District of California issued a "nationwide

preliminary injunction enjoining the Rule in its entirety" on January 8, 2021.  Motion at 5; *see also Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966, 977 (N.D. Cal. 2021).  To date, the preliminary injunction remains in place and the matters are administratively closed pending further order of that court.

Given the nationwide preliminary injunction, this court ordered the parties to meet and confer and file a Joint Status Report (JSR) indicating "1) whether the current dispute has been mooted or the parties anticipate that it will be mooted; 2) whether the parties wish to stay this action for any reason, including the parties' negotiations over resolving this dispute; or 3) whether the parties agree that this litigation should continue as anticipated pursuant to the federal rules, local rules or a scheduling order."  1/28/21 Min. Order.  In accordance with the court's Order, the parties filed a Joint Stipulation requesting that the matter be held in abeyance so long as the preliminary injunction in *Pangea* and *Immigration Equality* "remain[ed] in place," and as the Departments continued to review the Rule.  ECF No. 16 at 2.  The action was stayed on February 9, 2021.  2/9/21 Min. Order.

Over the next fourteen months, the parties filed JSRs every thirty days, apprising the court on updates and progress related to the Rule.  *See* ECF Nos. 17–20, 22–24, 26–28, 30, 32–35 (monthly JSR reports).  On September 7, 2022, Plaintiffs indicated their intent to file a motion to partially lift the stay.  ECF No. 35 at 2.  Contending that they "never intended for the litigation to be stayed indefinitely," Plaintiffs asserted that there was "good reason to seek prompt resolution" of the matter.  *Id.*  Their Motion to Partially Lift Stay, ECF No. 37, was filed on September 23, 2022.

On December 1, 2022, the court denied Plaintiffs' motion without prejudice.  12/1/22 Min. Order.  Although "troubled by the length of the stay," the court found that "the facts that

precipitated the stay"—the nationwide preliminary injunction in *Pangea*—"[had] not changed." *Id.* Moreover, "judicial economy and the weighing of harms to the parties if the stay" was lifted weighed in favor of "waiting until the end of May 2023, to observe whether Defendants [had] completed" the prospective rulemakings they indicated in their Opposition to Plaintiffs' Motion. *See id.*; *see also* ECF No. 42 at 4–5 fn. 3 (citing to three rulemakings related to the Rule that "the Departments have been working on"). The court also ordered the parties to file a JSR by June 1, 2023 and set a status hearing for June 2, 2023. 12/1/22 Min. Order. As of the June 1 JSR, "the three prospective rulemakings . . . still [had] not been published" and Plaintiffs declared they had "no reason to believe" that publication was "imminent." ECF No. 44 at 2.

Defendants also indicated at the June 2 Status Hearing that the nationwide preliminary injunction remained in place, the Government did not plan to ask that the stay be lifted, and the Departments continued to "work on the rulemakings" with no projected deadlines for completion. ECF No. 46 at 3–4. In response, Plaintiffs asked to move forward with their first three claims, which are "based on the appointment of Chad Wolf and whether he had valid authority to promulgate" the Rule. *Id.* at 5. The court set a briefing schedule for a renewed motion to partially lift the stay, including briefing on whether the court could hear Plaintiffs' first three claims given the nationwide preliminary injunction.

On February 9, 2024—three years since the parties agreed to the stay—Plaintiffs filed a Supplemental Authority notifying the court that the government published its Fall 2023 Unified Agenda, which identified November 2023 and January 2024 "as the 'aspirational' dates for the unveiling of these proposed rules." ECF No. 53 at 1. Plaintiffs noted that those "dates have since passed, and Defendants have yet to publish a Notice of Proposed Rulemaking for either of these rules, much less finalize them." *Id.*

## II.  LEGAL STANDARD

District courts are given broad discretion in determining "whether to grant or lift a stay." *Judicial Watch, Inc. v. U.S. Dept. of Justice*, 57 F. Supp. 3d 48, 50 (D.D.C. 2014); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (holding that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Naturally, "the same court that imposes a stay of litigation has the inherent power and discretion to lift the stay." *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003).

When assessing a stay, a court must "weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (internal quotations omitted). A court must also consider "the danger of denying justice by delay." *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 153 (1964). And a stay that continues "for an immoderate stretch of time is not to be upheld as moderate." *Belize*, 668 F.3d at 732.

## III.  DISCUSSION

Plaintiffs ask the court to partially lift the stay to allow them to move forward on their first three claims, all of which challenge Wolf's appointment as DHS Secretary. Defendants argue that partially lifting the stay—even for these three claims—would not be in the interest of justice as the nationwide preliminary injunction remains in effect and therefore the circumstances that justified the stay still exist. They further argue that the balance of relevant factors weighs in their favor.

### A. Adjudicating Plaintiffs' Claims Despite the Nationwide Injunction

Plaintiffs asserts that the nationwide injunction "does not deprive" the court from hearing claims concerning Wolf's appointment to DHS Secretary. Motion at 14. Defendants appear to concede the point, but contend that if the court granted Plaintiffs' motion, the "existence of the preliminary injunction might implicate" their prospective arguments. *See* Opp'n Br. at 7 ("the Departments do not believe that the preliminary injunction in *Pangea* itself prevents the Court from adjudicating this case.").

The court agrees that the fact that the nationwide injunction in *Pangea* remains in effect does not prevent it from adjudicating Plaintiffs' claims relating to Wolf. "If courts were to conclude . . . that an order granting a nationwide, preliminary injunction in one district was sufficient to shut down all other, similar litigation, the resolution of important questions would be left to a single district court and to a single circuit, losing the benefit of the 'airing of competing views' on difficult issues of national importance." *Nw. Immigrant Rts. Project v. USCIS*, 496 F. Supp. 3d 31, 81 (D.D.C. 2020) (quoting *DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of stay)). And, as Plaintiffs note, this court would not be the first to adjudicate claims challenging Wolf's appointment as Acting DHS Secretary. *See Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11, 13 (D.D.C. 2022) (collecting cases) (concluding that, in accordance with other district courts, "Wolf's ascension to the office of Acting Secretary was unlawful").

Defendants also assert that, if the court were to grant Plaintiffs' motion, they "anticipate arguing that Plaintiffs lack standing, and the existence of the preliminary injunction might implicate those arguments," including, *inter alia*, "whether the Court has jurisdiction to consider Plaintiffs' claims given the [INA's] unique jurisdiction-limiting provisions." Opp'n Br. at 7, 9.

Page **6** of **11**

But this is an insufficient basis to deny Plaintiffs' motion. The court need not address Defendants' possible future arguments today in order to partially lift the stay. Thus, the nationwide preliminary injunction would not inhibit the court from adjudicating Plaintiffs' first three claims.

### B. Lifting the Stay

In deciding whether to lift the stay, the court must consider whether "circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate." *Marsh*, 263 F. Supp. 2d at 52.

It is true that, to date, the circumstances which led to this stay remain unchanged. *See Pangea*, No. 3:20-cv-09253-JD, ECF No. 97 and *Immigration Equality*, 3:20-cv-09258-JD, ECF No. 72 (Orders docketed on 2/4/2022 and 10/21/2021, respectively, holding the cases "administratively closed pending further order" of the court). But, given how long the stay has been in place—with no apparent end to the rulemaking process in sight—and Plaintiffs' renewed request, the court believes that the full stay is no longer warranted and Plaintiffs are entitled to move forward with certain claims.

In weighing the balance of harm to the parties, the scale tips in Plaintiffs' favor. *See Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019) ("The Court . . . considers the injury to the party being stayed.") (internal quotation marks omitted). As mentioned previously, Plaintiffs' first three claims challenging Wolf's appointment as DHS Secretary have already been litigated before a handful of district courts. Although the Rule enjoined in *Pangea* is also the Rule at issue here, imposing the nationwide preliminary injunction did not prevent the *Pangea* court from addressing the validity of Wolf's appointment in its preliminary injunction analysis. *See Pangea*, 512 F. Supp. 3d at 975 (". . . plaintiffs have shown a likelihood that the

DHS lacked authority through Wolf for the proposed rulemaking. . .").  Likewise, here, another district court's decision enjoining Defendants from enforcing or implementing the Rule need not inhibit this court's consideration of limited claims that have been litigated elsewhere.  To act otherwise would "deny[] justice by delay."  *Gillespie*, 379 U.S. at 153.

Plaintiffs also argue that the stay has harmed them and prevented them from having "their day in court," to make their argument that "Chad Wolf had no legal authority to approve the Rule. . . [j]ust like the litigants in [] other cases" and that "the *Pangea* injunction is not a complete or sustainable solution to the problems caused by the Rule's illegal promulgation."  Motion at 24–25.  Plaintiffs submit two declarations setting forth how the Rule has harmed their missions to support asylum-seeking immigrants and to provide low-income immigrants with legal, social, and language services.  *See generally* Ex. A, Tahirih Decl., ECF No. 47-1 & Ex. B, Ayuda Decl., ECF No. 47-2.

Adilene Nunez Huang, Tahirih's Co-Director, attests that the Rule, "combined with lengthy backlogs and delays in adjudications impact [their] pro bono partners and their ability and willingness to represent clients pro bono in both affirmative and defensive claims for asylum." Tahirih Decl., ¶ 8.  According to Huang, there has been a "refusal among law firms in accepting asylum cases for these reasons," and "[a]n inability to place cases with pro bono partners dramatically increases the time spent on a case by Tahirih attorneys, which in turn reduces the number of service seekers accepted for full representation."  *Id.*  The declaration from Megan Turngren, Ayuda's Legal Director, paints an equally somber picture.  She states that "despite the preliminary injunction in place, its temporary nature does not permit attorneys to decisively rely on the absence of the rule when determining the success of potential clients' cases," and as a result, "some attorneys are feeling forced to pass over immigrants with claims

impacted by the [] Rule in favor of those immigrants with claims not impacted by the [] Rule." Ayuda Decl. ¶¶ 10–11. The Rule "has also limited Ayuda's ability to apply for and maintain funding," because when "Ayuda underestimates the amount of resources needed for its cases and overpromises its deliverables . . . [it] places Ayuda at risk of losing money from its funders, which would result in Ayuda having to lay-off attorneys," which would "directly harm not only Ayuda's attorneys but its clients as well." *Id.* ¶¶ 12, 16. Based on the declarations, Plaintiffs have established that continuing the stay would harm their missions and threaten their continued funding and functioning.

Defendants counter that if the stay were lifted, they would be harmed because "the time spent litigating this case would impede Defendants' ability to work on the rulemaking as some personnel are involved with both and will be forced to spend time on the litigation that could have been spent on the rulemaking." Opp'n Br. at 23. But the "burden of litigation is wholly insufficient to warrant a stay." *Asylumworks v. Mayorkas*, No. 20-cv-3815, 2021 WL 2227335, at *6 (D.D.C. June 1, 2021); *see also Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) ("being required to defend a suit, without more, does not constitute a clear case of hardship or inequity") (internal quotation marks omitted). And given that Plaintiffs indicated in September 2022 that they intended to ask for the stay to be lifted, Defendants have been on notice that the litigation might resume and have had over a year to prepare for such an eventuality. Thus, the court is not persuaded that Defendants have made "out a clear case of hardship or inequity in being required to go forward" with Plaintiffs' first three claims. *Landis*, 299 U.S. at 255.

The court also considers whether lifting the stay "would promote efficient use of the parties' and the court's resources." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 22.

Defendants contend that the stay should remain in place because "the Departments are engaged in rulemaking that they expect will moot out the cases challenging the Rule," and any "potential for mootness should alone be sufficient" to keep the stay. Opp'n Br. at 8–9. The court is not convinced.

First, Defendants have been engaged in rulemaking since the parties first filed their JSR following issuance of this stay, over three years ago. 2/9/21 Min. Order; *see also* ECF No. 17. Defendants' position remained essentially unchanged for the subsequent sixteen months. *See* ECF Nos. 18–20, 22–24, 26–28, 30, 32–35 (spanning from August 2021 to September 2022). Moreover, Defendants have been unable to provide any concrete information concerning when they expect the rulemaking to conclude and thus "moot out the cases challenging the Rule." *See* Transcript of 6/2/23 Status Hearing, ECF No. 46 at 4 (when asked if they know when rulemaking would conclude, Defense counsel responded: "Unfortunately, I don't."); *see also Asylumworks*, 2021 WL 2227335, at *5 (denying Defendant's motion to stay proceedings because, *inter alia*, their contention that rulemaking "may moot or reshape the claims," without any indication of plans to alter or repeal the rules, was "entirely theoretical"). Upholding the stay here would be improper because "[p]ostponing the resolution of the issues raised in this case for some indefinite time does not comport with the efficient and timely judicial resolution of matters before the federal courts." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 31 (D.D.C. 2002).

Therefore, because the stay has been in effect for more than three years and there is no projected end to Defendants' rulemaking process, judicial economy weighs in favor of partially lifting the stay to move forward on at least some of Plaintiffs' claims. *See Judicial Watch*, 57 F. Supp. 3d at 53. Accordingly, it is hereby

**ORDERED** that Plaintiffs' Renewed Motion to Partially Lift the Stay is **GRANTED**; and it is further,

**ORDERED** that the parties shall meet, confer, and file a Joint Status Report by April 12, 2024 with a proposed briefing schedule for moving the case forward as to Plaintiffs' Counts One through Three.

Date: March 4, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge